IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **MELVIN J. TAYLOR,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:05-0781** |
| | ) | |
| **TODD R. CRAIG,**[1] | ) | |
| **Warden, FCI Beckley,** | ) | |
| | ) | |
| Respondent. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On September 21, 2005, Petitioner filed an Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.[2] (Document No. 1.) As grounds for claiming entitlement to relief under Section 2241, Petitioner states as follows:

1. Parole Procedure Unconstitutional. Failure of disclosure of adverse information by the usage of incident reports from contract prison.

2. Ex Post Facto Violation. Whereas U.S. Parole Commission used wrong Guidelines to create improper set off.

3. Violation of Constitutional Rights under 13th Amendment. The U.S. Parole Commission took 'street time' and 'good time' unlawfully to prolong sentence and for sole purpose of keeping their abolishment at bay. The U.S. Congress erred, and promoted slavery.

4. Violation of Due Process and Failure to Disclosure Adverse Evidence.

---

[1] When Petitioner filed this civil action, Charles T. Felts was serving as the Warden of FCI Beckley. Todd R. Craig, however, has since been designated as the Warden. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Todd R. Craig is substituted as the party Respondent in this civil action.

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

> Petitioner Taylor was never given the opportunity to contest or protest documents that were used against him at the parole hearing, nor was he represented by an attorney.

(Document No. 1, p. 7.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

## FACTUAL AND PROCEDURAL HISTORY

Petitioner was sentenced by the District of Columbia Superior Court to an aggregate 45 year term of imprisonment for threatening to injure a person and manslaughter. On May 25, 2002, Petitioner became eligible for parole consideration. The U.S. Parole Commission [USPC] conducted Petitioner's initial parole hearing on December 20, 2001. The USPC determined that Petitioner's parole guideline range was 165-185 months. The USPC denied parole, and ordered a reconsideration hearing in December, 2004, after service of 36 months. The USPC noted that it was not making findings regarding Petitioner's numerous incident reports because the documents concerning the disposition of those incidents were not available. The USPC, however, stated as follows:

> The Parole Commission's file contains copies of numerous incident reports, which were not reviewed with you at your hearing. The Commission will attempt to obtain the dispositions of the reports, the majority of which occurred while you were in CCA custody. At your reconsideration hearing in December, 2004, all of the incident reports listed below (and, in addition, any reports you receive between December 2001 and December 2004) will also be considered. If findings are made on the incidents, your total Guideline Range as calculated above will increase.

(Document No. 12, p. 20, Exhibit 3.)

On February 16, 2005, the USPC conducted Petitioner's reconsideration hearing. During the hearing, Petitioner acknowledged that he committed the offenses contained in the incident reports. Specifically, the hearing examiner stated as follows: "He admitted the behavior, but argued that the

infractions occurred in a contract facility that violated the Department of Corrections procedures. It was his opinion that the infractions should be disregarded." (Document No. 12, p. 32, Exhibit 5.) Petitioner further argued that his incident reports should not be considered because disciplinary hearings were not taped in violation of Department of Corrections [DOC] procedure. (Id., p. 33, Exhibit 5.) The hearing examiner found that Petitioner's incident reports would be considered because "they are infractions in his record and he must be held accountable for them." (Id.) The hearing examiner further noted that "the DHO Report was available and Mr. Taylor did appear for a hearing and was found in violation by that Disciplinary Hearing Board." (Id.) The USPC determined that Petitioner committed the numerous disciplinary infractions and assessed additional guidelines of 76-118 months[3] for an aggregate guideline range of 241-303 months. (Id., pp. 35 - 37, Exhibit 6.) The USPC ordered that Petitioner receive a rehearing in February, 2010. (Id.)

By Order filed on September 22, 2005, the undersigned directed Respondent to show cause, if any, why Petitioner's Petition for Writ of *Habeas Corpus* should not be granted. (Document No. 8.) Respondent filed a Response on October 21, 2005, contending that Petitioner's claims are without merit. (Document No. 12.) First, Respondent argues that "Petitioner cannot prevail on a claim that he has a due process right to disclosure of the infraction reports: he has no such right under the Constitution, statute, or regulation." (Id., p. 12.) Second, Respondent contends that Petitioner's *ex post facto* claim is without merit because the USPC guidelines do not constitute law for purposes of *ex post facto*. (Id., p. 7.) Third, Respondent asserts that "the Commission in fact did not 'take' any

---

[3] The Commission reached an aggregate of 76-118 months based upon the following: (1) 0-2 months for each of the eleven non-drug related infractions, which totaled 0-22 months; (2) 52-64 months for assault on a correctional officer resulting in injury; (3) 12-16 months for possession of major contraband; and (4) 12-16 months for assault on an officer without injury.

street time or good time credits from petitioner, as it conducted an initial parole consideration for petitioner, not revocation of parole, at which such credits are subject to forfeiture." (Id., p. 7.) Respondent further states that "[r]equiring a convicted felon to serve his sentence cannot constitute slavery." (Id.) Finally, Respondent claims that "there is no due process right on the part of D.C. Code offenders either to prehearing disclosure of information or to appointment of counsel." (Id.)

Petitioner subsequently filed a Reply to Respondent's Response. (Document No. 18.) Petitioner first argues that he "received an additional 12-15 months for the same disciplinary infraction that Petitioner received 0-2 months at his initial hearing." (Id., p. 2.) Next, Petitioner contends that "the Commission arbitrarily or capriciously abused its discretion in determining Petitioner's disciplinary guidelines range based on disciplinary reports that the DHO made no finding of guilt." Specifically, Petitioner states that "disciplinary reports #2, #3, #4, #6, #7, #9, #10, and #11 indicate that DHO findings were unknown. Hence these incident reports with 'no DHO findings' amounted to an additional 64-92 months added to the eligible parole release date." (Id., pp. 2 - 3.) Therefore, Petitioner alleges that the USPC improperly considered the above disciplinary reports.

On November 16, 2005, Respondent filed his "Reply to Petitioner's Response." (Document No. 13.) First, Respondent argues that Petitioner's claim that he was punished twice for the same conduct is without merit. (Id., p. 1.) Specifically, Respondent argues that the guideline range determined at Petitioner's initial hearing "did not include most of his disciplinary infractions because the information about the infractions was not available." (Id.) Respondent states that the USPC informed Petitioner that the calculation of his guideline range was incomplete, and merely "corrected Petitioner's guideline range when it obtained the necessary information about his

4

disciplinary infractions." (Id., p. 2.) Finally, Respondent contends that Petitioner's claim concerning the lack of DHO findings is without merit because Petitioner admitted all of the infractions during his reconsideration hearing. (Id.) Counsel proffers to the Court that he reviewed the tapes of the reconsideration hearing and "Petitioner's statement in response to the question, 'Do you deny the infractions?' was 'No, I do not deny them.'" (Id.)

On July 10, 2006, Petitioner filed a Motion to Amend and Supplement Additional Facts to Release Mr. Taylor Immediately From Custody of the Bureau of Prisons." (Document No. 15.) By Order entered on February 13, 2007, the undersigned granted in part and denied in part Petitioner's motion. (Document No. 19.) Specifically, the undersigned granted Petitioner's motion "[t]o the extent that Petitioner is seeking permission to have the Court consider additional legal and factual arguments in support of his Application" and denied the motion "[t]o the extent that Petitioner has requested that Respondent's Response be stricken from the record." (Id.) It appears that Petitioner seeks to amend his Application to include the following: "The petitioner now 'protests' the constitutionality of the U.S. Parole Commission being in existence and having legal power to hold revocation hearings in jail, over D.C. Code Offenders, in violation of the separation of power doctrine." (Document No. 15.)

## **ANALYSIS**

Generally, when a decision of the United States Parole Commission [USPC] is challenged in *habeas* proceedings, judicial review is limited to determining whether the USPC abused its discretion by violating a constitutional, statutory or regulatory provision. The Court, however, may not review the discretionary decision of the USPC to deny parole under an abuse of discretion standard. See Garcia v. Neagle, 660 F.2d 983, 987-89 (4th Cir. 1981)(Finding that the USPC's

5

substantive decision setting prisoner's presumptive parole date was not subject to judicial review under an abuse of discretion standard); Page v. Pearson, 261 F.Supp.2d 528, 530 (E.D.Va. 2003)(Parole decisions are not "subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)). Although the Court cannot review the substance or merits of the parole decision, it can examine the decision to determine whether it violates constitutional, statutory, regulatory, or other restrictions. Id.; see also Gruber v. United States Parole Commission, 792 F. Supp. 42 (N.D.W.Va. 1992).

The Revitalization Act vested the USPC with the sole authority to administer the District of Columbia parole system on August 5, 1998. See The National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, codified at District of Columbia Code § 24-131(a)(1)(2001)("Not later than one year after August 5, 1997, the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole. . .."). Thus, the USPC is responsible for making parole release decisions for all eligible District of Columbia Code felony offenders, including Petitioner. The USPC must follow the parole laws and rules of the District of Columbia as amended and supplemented by the USPC. The USPC has amended the parole rules and guidelines of the District of Columbia. See 28 C.F.R. §§ 2.80, et seq.; see also Muhammad v. Mendez, 200 F.Supp.2d 466, 469-70 (M.D. Pa. 2002). The USPC has prescribed the procedure it employs with respect to District of Columbia Code offenders at 28 C.F.R. §§ 2.70, et seq.

The undersigned finds no evidence supporting Petitioner's claim under Section 2241 that he is in custody in violation of the Constitution or laws of the United States. First, Petitioner claims that the USPC violated his due process rights by (1) failing to disclose the incident reports from the

contract prison, and (2) failing to allow Petitioner an opportunity to dispute the documents. The undersigned first notes that Petitioner acknowledged and admitted all disciplinary infractions during the parole hearing. (Document No. 12, p. 32, Exhibit 5.) Additionally, the Parole Form I-24 indicates that (1) Petitioner waived his right "to inspect [his] files before the hearing scheduled on this form," and (2) Petitioner "reviewed the material in [his] institutional file on 01-04-05." (Id., p. 39, Exhibit 7.) Thus, Petitioner was clearly "apprised of the information and afforded an opportunity to respond."[4] See 28 C.F.R. § 2.19(c). Moreover, it is well recognized that "[t]here is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence." Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668(1979). It is also well recognized that the D.C. parole statute and regulations do not create a liberty interest. See e.g., Blair-Bey v. Quick, 151 F.3d 1036, 1047 (D.C. 1998); Price v. Barry, 53 F.3d 369, 370 (D.C. Cir. 1995); Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996); Brandon v. D.C. Board of Parole, 823 F.2d 644, 648 (D.C. Cir. 1987). Thus, the due process clause does not mandate particular procedures when there is no liberty interest. Accordingly, Petitioner's above claim is without merit and should be dismissed.

Second, Petitioner argues that the USPC violated the *Ex Post Facto* Clause by applying the "wrong [parole] guidelines to create an improper set off." A law violates the *Ex Post Facto* Clause if it is retrospective and disadvantages the offender affected by it. See Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 117 (1981). Concerning the first element, a law is retrospective if it "changes the legal consequences of the acts completed before its effective date."

---

[4] In determining parole guidelines, the USPC's regulations permit it to take into account "any substantial information available to it provided the prisoner is apprised of the information and afforded an opportunity to respond." See 28 C.F.R. § 2.19(c).

Weaver, 450 U.S. at 31, 101 S.Ct. at 965. Regarding the second element of an *ex post facto* claim, an offender is disadvantaged by "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver, 450 U.S. at 28, 101 S.Ct. 964 (citations omitted). Thus, even if a law is retrospective, the law does not violate the *Ex Post Facto* clause unless it adds to the quantum of punishment. See Weaver, 450 U.S. at 30-31, 101 S.Ct. at 965.

Although the Fourth Circuit Court of Appeals has not determined whether or not the USPC parole guidelines constitute laws for *ex post facto* purposes, the majority of the Circuit Courts have held that USPC parole guidelines are not laws and, therefore, cannot give rise to an *ex post facto* violation. See Dinapoli v. Northeast Parole Comm'n, 764 F.2d 143, 146 (2d Cir. 1985)(stating that the federal parole guidelines "are not 'laws' within the meaning of the ex post facto clause"); Sheary v. United States Parole Comm'n, 882 F.2d 556, 558 (5th Cir. 1987)(declaring that "[t]here is no *ex post facto* violation in retroactive application of the [Parole Commission] guidelines."); Ruip v. United States, 555 F.2d 1331, 1335 (6th Cir. 1997); Inglese v. United States Parole Comm'n, 768 F.2d 932, 935-36 (7th Cir. 1985)(holding that the USPC "parole guidelines are not 'laws,' and therefore can be applied ex post facto without violating petitioner's constitutional rights."); Rafai v. United States Parole Comm'n, 586 F.2d 695, 698 (9th Cir. 1978)(stating that the USPC parole guidelines "are merely procedural guideposts, without the characteristics of laws."); Dufresne v. Baer, 744 F.2d 1543, 1550 (11th Cir. 1984). As the Eleventh Circuit said, the USPC guidelines "merely indicate when, in most cases, the prisoner can expect release. We agree with the second, sixth, seventh and ninth circuits that the parole guidelines do not have the force and effect of law." Dufresne v. Baer, 744 F.2d at 1550. This District has agreed with the majority of the Circuit Courts

and held that the USPC parole guidelines are not laws for *ex post facto* purposes. See McKissick v. U.S. Parole Com'n, 295 F.Supp.2d 643 (S.D.W.Va. 2003), aff'd, 67 Fed. Appx. 824 (4th Cir. 2003). Based on the foregoing, the undersigned finds that the USPC parole guidelines do not constitute laws for purposes of *ex post facto* consideration. The guidelines operate only to provide a framework for the USPC's exercise of its discretion. See 28 C.F.R. § 2.18 (stating that the granting of parole to an eligible prisoner rests in the discretion of the USPC). Thus, Petitioner's claim of an *ex post facto* violation is without merit.

Moreover, the USPC did not use the "wrong guidelines to create an improper set off." The regulations provide that the USPC may do the following after an initial or subsequent hearing:

> (i) Set an effective date of parole within nine months of the date of the hearing; (ii) Set a presumptive parole date at least ten months but not more than three years from the date of the hearing; (iii) Continue the prisoner to the expiration of sentence if the prisoner's mandatory release date is within three years of the date of the hearing; (iv) Schedule a reconsideration hearing at three years from the month of the hearing; and (v) Remand the case for a rehearing on the next available docket (but no later than 180 days from the date of the hearing) for consideration of additional information.

28 C.F.R. § 2.75(a)(1). The regulations further provide that "[i]f the prisoner's current behavior resulted in the death of a victim and, at the time of the hearing, the prisoner must serve more than three years before reaching the minimum of the applicable guideline range, the Commission may schedule a reconsideration hearing at a date up to five years from the month of the last hearing, but not beyond the minimum of the applicable guideline range." 28 C.F.R. § 2.75(a)(2)(i). The USPC applied the exception set forth above and determined "a 5-year set off is appropriate in this case." (Document No. 12, p. 34, Exhibit 5.) It is clear that the USPC appropriately applied its regulations. Petitioner was convicted of manslaughter and had "approximately 88 months" remaining before reaching the minimum of the applicable guideline range. (Id.) Accordingly, Petitioner's claim that

the USPC violated the *Ex Post Facto* Clause by misapplying the guidelines is without merit.

Third, Petitioner contends that the USPC "took 'street time' and 'good time' unlawfully to prolong sentence and for sole purpose of keeping their abolishment at bay" and "to promote slavery." First, the undersigned finds that there is no indication that Petitioner lost any "street time" or "good time" credit. It is clear that the law permits the revocation of "good time" and "street time" credit upon the revocation of parole.[5] See U.S. Parole Commission v. Noble, 693 A.2d 1084, 1104 (D.C. Apr. 17, 1997). The USPC, however, was considering Petitioner for parole, not revoking his parole. Additionally, no Thirteenth Amendment violation is implicated because the Thirteenth Amendment does not apply to "a punishment for crime whereof the party shall have been duly convicted" and there is no question that Petitioner has been subject to such a punishment.

Fourth, Petitioner alleges that he was improperly denied assistance of counsel during his parole hearing. The USPC regulations provide that "a prisoner may have a representative at the hearing pursuant to § 2.13(b) and the opportunity for prehearing disclosure of file material pursuant to § 2.55." See 28 C.F.R. § 2.72(b). A "representative" is "a person of '[the prisoner's] choice." 28

---

[5] "Good time" credits are generally earned while a person is in custody. "Street time" credits are earned while a person is released on parole. D.C. Code § 24-431(a) states that "[e]very person shall be given credit on the maximum and minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed." D. C. Code § 24-206(a) provides that "[i]f the order of parole shall be revoked, . . . [t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." D.C. Code § 24-406(a) provides that, if parole is revoked, "the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody." *See McRae v. D.C. Parole Board*, 2002 WL 32388337 (E.D.Va.), *dismissed*, 46 Fed.Appx. 207 (4th Cir. (Va.) September 23, 2002). In *Noble v. United States Parole Commission*, 82 F.3d 1108, 1109 (D.C. Cir. 1996), the United States Court of Appeals for the District of Columbia certified the question to the District of Columbia Court of Appeals whether the USPC properly interpreted §§ 24-206(a) and 24-431(a) in deciding that, after revocation of a person's parole, time which the person spent on parole before revocation could not be credited against his sentence. The District of Columbia Court of Appeals answered "yes." *U.S. Parole Commission v. Noble*, 693 A.2d 1084, 1104 (D.C. Apr. 17, 1997).

C.F.R. § 2.13(b). "[T]he function of the prisoner's representative shall be to offer a statement at the conclusion of the interview of the prisoner by the examiner, and to provide such additional information as the examiner shall request." Id. Although the USPC regulations provide that an inmate is entitled to have a representative at the hearing, Petitioner waived this right on his Parole Form I-24. (Document No. 12, p. 38, Exhibit 7.) Furthermore, there is no constitutional right to representation by counsel at a parole hearing. Burgos v. U.S. Dept. Of Justice, 1987 WL 16327 (D.D.C. Aug. 19, 1987), citing Billiteri v. Board of Parole, 541 F.2d 938, 945 (2nd Cir. 1976)(stating that "a prisoner has no constitutional right to counsel at a parole determination proceeding); see also Gagnon v. Scarpelli, 411 U.S. 778, 783-90, 93 S.Ct. 1756, 1760-64, 36 L.Ed.2d 656 (1973)(holding that the Constitution provides no general Sixth Amendment right to counsel in parole or probation revocation proceedings.) Therefore, the undersigned finds that Petitioner's claim that the USPC violated his constitutional rights by denying him counsel is without merit.

Fifth, Petitioner argues that he "received an additional 12-15 months for the same disciplinary infraction that Petitioner received 0-2 months at his initial hearing." Petitioner additionally claims that "the Commission arbitrarily or capriciously abused its discretion in determining Petitioner's disciplinary guidelines range based on disciplinary reports that the DHO made no finding of guilt." The undersigned finds that there is no evidence that Petitioner was punished twice for the same conduct[6] or that the USPC improperly considered disciplinary infractions. In determining parole guidelines, the USPC's regulations permit it to take into account

---

[6] According to Petitioner's Initial Hearing Summary, the USPC found that Petitioner was "involved in one countable misconduct [inciting a riot] in 1995 while he was confined in a DC Facility." (Document No. 12, p. 16, Exhibit 2.) This offense was clearly not listed in those incident reports considered at Petitioner reconsideration hearing. (Id., Exhibits 4 and 6.)

"any substantial information available to it provided the prisoner is apprised of the information and afforded an opportunity to respond." See 28 C.F.R. § 2.19(c). During Petitioner's initial parole hearing, the USPC noted that it was not making findings regarding Petitioner's numerous incident reports because the documents concerning the disposition of those incidents were not available. The Commission, however, stated that "[a]t your reconsideration hearing in December, 2004, all of the incident reports listed below (and, in addition, any reports you receive between December 2001 and December 2004) will also be considered. If findings are made on the incidents, your total Guideline Range as calculated above will increase." In the Prehearing Assessment, it was noted that "[t]he subject has incurred two DHO's since his last hearing and had 16 other charges that were not considered at the last hearing." (Document No. 12, p. 25, Exhibit 4.) The USPC report contains a list of fourteen disciplinary infractions committed by the Petitioner, which were reviewed and considered by the USPC.[7] (Id., p. 29, Exhibit 4.) The hearing examiner discussed the incident reports

---

[7] The USPC found as follows considering the infractions:

> You have 11 non-drug related infractions [0-2 months each], which requires 0-22 months to be added to your prior total guideline range.
>
> You have behavior that constitutes new criminal conduct in a prison facility or community corrections center which is rated as Category Six severity because it involved assault on an officer(s) with injury on 11/3/1994. This requires 52-64 months to be added to your prior total guideline range.
>
> You have behavior that constitutes new criminal conduct in a prison facility or community corrections center which is rated as Category Three severity because it involved major contraband (weapon) on 07/19/1995. This requires 12-16 months to be added to your prior total guideline range.
>
> You have behavior that constitutes new criminal conduct in a prison facility or community corrections center which is rated as Category Three severity because it involved assault on an officer(s) on 07/19/1995. This requires 12-16 months to be added to your prior total guideline range.

with the Petitioner at the hearing and afforded him the opportunity to respond to the reports.[8] (Id., p. 32, Exhibit 5.) If there is a dispute concerning the accuracy of information that is part of the USPC's consideration, the dispute is to be resolved by the preponderance of the evidence. See 28 C.F.R. § 2.19(c). The undersigned notes that Petitioner did not dispute that he committed the acts contained in the incident reports. Thus, the hearing examiner found that Petitioner committed the fourteen infractions based upon "[his] admission and the DHO findings."[9] (Document No. 12, pp. 35 - 36, Exhibit 6.) Accordingly, the undersigned finds that the above claims should be dismissed.

Finally, Petitioner challenges "the constitutionality of the U.S. Parole Commission being in existence and having legal power to hold revocation hearings in jail, over D.C. Code Offenders, in violation of the separation of powers doctrine." As stated above, the USPC clearly has the authority to conduct parole hearings concerning District of Columbia Code Offenders. On August 5, 1998, the Revitalization Act vested the USPC with the sole authority to administer the District of Columbia parole system. See The National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745, codified at District of Columbia Code § 24-131(a)(1)(2001)("Not later than one year after August 5, 1997, the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the

---

(Document No. 12, p. 36, Exhibit 6.)

[8] The Hearing Summary states as follows: "The Examiner discussed each of the infractions listed in the 1-31-05 prehearing assessment (PHA) with the subject. He admitted the behavior, but argued that the infractions occurred in a contract facility that violated the Department of Corrections procedures. I was his opinion that the infractions should be disregarded." (Document No. 12, p. 32, Exhibit 5.)

[9] The hearing examiner stated as follows: "Most of the disciplinary reports did not indicate a finding or sanctions, but noted that disciplinary action was taken and some type of sanctions imposed. This examiner made a finding of guilt on those charges." (Document No. 12, p. 30, Exhibit 4.)

District of Columbia to grant and deny parole. . ..."). Furthermore, the separation of powers doctrine is not violated because the USPC does not exercise a judicial function. Taylor v. Hollingsworth, 2007 WL 5614097 (D.Md. Oct. 9, 2007), aff'd, 280 Fed. Appx. 294 (4th Cir. 2008)(stating that "[t]he Commission does not exercise a judicial function and its decisions do not violate the separation of powers"); also see Thompson v. District of Columbia Dept. of Corrections, 511 F.Supp.2d 111 (D.D.C. 2007)(holding that "the Commission did not usurp a judicial function in violation of the separation of powers when it rescinded prisoner's street-time credit upon each of his parole revocations"); Bailey v. Reilly, 2007 WL 840324 (D.S.C. March 15, 2007)(holding that the Commission did not engage in sentencing in violation of the separation of powers doctrine because the Commission's decision in no way increased petitioner's sentence). Therefore, Petitioner's above claim is without merit and should be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application for Writ of *Habeas Corpus* by a Person in Federal Custody Pursuant to 28 U.S.C. § 2241 (Document No. 1.) and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have

thirteen (13) days from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner who is acting *pro se*.

Date: February 5, 2009.

R. Clarke VanDervort
United States Magistrate Judge